Good morning. My name is Kate Adams, and I represent appellant Mark Isham in this case. The district court committed reversible error when it found that Mr. Isham was not in custody for purposes of his inculpatory statement elicited by law enforcement at his home, and further reversibly erred when it admitted the unspecified assaults evidence pursuant to Rule 404B. I intend to address both points briefly here this morning, and I'll begin with the custody determination. The district court applied the right analysis here when it analyzed whether Mr. Isham was in custody pursuant to the Griffin factors. However, it significantly misapplied and misapprehended those factors, leading to an erroneous determination that, under the totality of the circumstances, Mr. Isham was not in custody. And I believe the Axum case, which is cited in both parties' briefing, is a pretty helpful lens here both to come to the correct conclusion that Mr. Isham was indeed in custody, and to demonstrate the ways in which the district court here misapplied those Griffin factors. I'll note that in the case where Mr. Axum was found by this court not to have been in custody, this court explicitly noted that it was a very close case. Here, in Mr. Isham's case, several factors that were not present in Mr. Axum's case do tend towards a custody determination, making Mr. Isham's case more similar to the Griffin case itself than to Isham. And it also shows, through the court's analysis of the factors in Axum, how the district court here misapplied those factors. I'll begin with the mitigating factors. The first mitigating factor is that if Mr. Isham were to have been told that he was not under arrest or free to leave, that would have been mitigating against a finding of custody. In the Axum case, Mr. Axum was indeed so advised that he was not under arrest, and that was undisputed in the record below there. Mr. Isham was not. Under Griffin and its progeny in the Axum case, that means that that mitigating factor was not present here, which would lean towards a finding of custody. But the district court misapplied that factor when it held that that was neutral towards the custody determination. The next mitigating factor is whether Mr. Axum's movement was restricted. The Griffin case itself makes clear that a police escort, police constant presence around an individual without physical restraint or literal arrest, satisfies that idea that movement was restricted. And in Axum, indeed, the court found and the Court of Appeals did not overturn that idea. Mr. Axum was monitored at all time, escorted by police officers, and his movement was found to be restricted. Here, the district court focused on the lack of physical restraints and lack of literal arrest to determine that Mr. Isham's movement was not restricted, when in fact, under Griffin and its progeny, it was. And finally, turning to the coercive factors, the district court here focused on the friendliness of the interaction and the absence of deceptive or strong-armed practices. But it did not consider an explicitly pertinent factor that Mr. Isham was arrested directly after the statement was elicited. Again, that stands in contrast to the Axum case, a close Didn't the officers, at least one of the officers, asked if he would be willing to come outside? I think at one point, they were trying to separate him from the woman they were trying to talk to. But does that factor in? I think it does factor in, Your Honor. In the Griffin case itself, the government kind of proposed the same rationale. So the government in its, you know, appellate briefing in that case, noted these kind of different reasons that it separated Mr. Griffin from his family members, that they were trying to, you know, privacy, whatever it is. The government is kind of putting forth those same reasons here. But at the end of the day, even the government concedes that Mr. Isham's movement was directed in this case. Twice in its briefing, it notes that the government, that the officers on scene directed Mr. Isham in and out of the house. It's very similar to the facts of the Griffin case. And, you know, the wording here, I think, is want to come outside with me in the circumstances here of this case where, you know, it's after midnight, it's a snowy night, officers, multiple officers have entered Mr. Isham's house and twice direct him to come outside to separate him from the other individual. I think it's hard to say that that's a voluntary acquiescence. But to return to the coercive factors, here the court didn't consider the fact that Mr. Isham was immediately arrested after the statement, which also is, you know, noted and applied as a coercive factor under Griffin that was given no weight here. And it stands in contrast to... Counsel, doesn't it matter what the statement was, though, as to whether what was stated was a sufficient trigger for arrest? So I think that doesn't... I think that essentially the statement acknowledged that there had been an assault and that the defendant was responsible for it. Yes, Your Honor. So the statement was a confession here, but the arrest directly after the statement is one of the factors that weighs towards this being an in-custody, like, you know, that Mr. Isham would not have reasonably felt free to leave the interaction. So, Your Honors, if Axum was a closed case, it follows that Mr. Isham was in custody when he gave this statement. The ultimate question here is, under the totality of the circumstances, would a reasonable person have felt free to leave or terminate the interaction? Here, where Mr. Isham had officers approach his home after midnight, in the dead of night, in the dead of winter, snow on the ground, enter his home, separate him twice from the other individual, direct him inside and outside the home, and elicit an inculpatory statement via interrogation, a reasonable person would not have felt free to leave. If Your Honors don't have further questions, I'll turn to the 404B question, noting I have limited time. This question is determined on a case-by-case basis, and in the circumstances of this case, I think really the most important thing to consider is that any of the numerous ways the government and the court here justified the admission of this unspecified assault evidence, it boils down to propensity. The government's proposed rationale in its initial notice of the 404B evidence was that the unspecified assault evidence showed an arc and a pattern that needs to come out for the jury to understand how we got to March of 2023 when the charged assault occurred. It is hard to parse that without necessarily concluding that the unspecified and now, during the charged conduct, has been violent again. Did the district court give any explanation for the admission of this evidence for a non-propensity reason? The district court accepted the government's pattern reason, and part of the limiting instruction, the district court noted that the evidence applied, the jury could consider it in terms of context for the relationship. The district court also gave an alternative supposedly non-propensity rationale of intent, and I'll speak about that in conjunction with the government's now on appeal rationale that it was relevant to rebut the self-defense theory. I think in both intent and rebutting self-defense, the real central question of this case was, was Mr. Isham the initial aggressor, or whether he acted in self-defense, whether he intended to cause bodily injury, or whether he acted in self-defense. And so, in order for this unspecified assault evidence to be relevant to either question, it really boils down to because Mr. Isham was the initial aggressor in the past, he acted in conformity with that violent propensity, and he again was the initial aggressor here. Does it matter that this is a domestic situation where you may have, the jury may have questions about why is she there and why is she still there, what's this relationship? Is it relevant to that? Do those facts make this different than another kind of self-defense case? I think it doesn't really make a difference here under the facts of this case, where it's really a he said, she said issue about whether Mr. Isham was the first aggressor in this case. And so, kind of the only way this is really being used is because Mr. Isham initiated violence in the past, is he the initial aggressor this time? And I think it is particularly inappropriate here where these are not convictions, which is usually what we're looking at in the terms of this domestic violence context. Unless the court has any further questions, I'll reserve the rest of my time. Thank you. Thank you. Good morning, Your Honor, as I may please the court. My name is Assistant United States Attorney Carla Baumel and I represent the United States, the appellee in this case. We're asking that the court affirm the lower court on both bases raised on appeal in this case, both with respect to that in custody determination and the 404B evidence admitted at trial. I'll begin first, similarly, with the issue of the custodial analysis that was performed below. So, Counsel, it does seem to be a rather close case. What tips the balance in favor of the non-custody? Well, in this case, Your Honor, there are several factors and the lower court highlighted them, all of them, in its opinion. First, as the court pointed out with the appellant in this case, the conversations that ultimately led to Mr. Isham having this conversation on the porch were conversational. They approached the house, approached his house, asking to come inside. He allowed them in. During the time that the police officers were inside the house, the conversation was directed toward the victim, not Mr. Isham. At no time did the police officers dictate where Mr. Isham was seated or what he was doing. When they did speak with him, they addressed him informally. Hey, Mark, is this your place? Do you mind if we just talk outside for a minute? His response was sure. In the conversation... They were trying to separate him, though, right, from the evidence shows that he was sort of hanging out near who you called the victim, and weren't they trying to get him away? Well, the police officers did observe her being guarded. He was actually seated alongside a chair watching TV while they were talking to her. And that was the point at which one of the officers asked him if they could talk with him outside. And when they did have that conversation outside, which is recorded on body camera, it was conversational. It was what's going on outside or what's going on? Can this victim stay here? There was a colloquy between them about whether she was welcome to be at the house. Mr. Isham described that he didn't think she had anywhere to go, that yes, she would be welcome to stay. This type of conversation simply isn't of that nature in ilk that rose to the occasion that would lead to the conclusion that he would have perceived he was in custody. Not only that sort of dynamic of the conversation was important to the lower court below, but also it's critical that this is all happening on Mr. Isham's turf. And the case law in this circuit is quite plain that when an individual is in the comfort of their home and there isn't this type of police domination that they're taking control of the scene, that lends in favor of a determination that he is not, in fact, in custody. It's also undisputed in this case, the defendant was never restrained. He was never told he was under arrest. And certainly, it wasn't even to the level of sort of chaperoning that this court described in United States v. Axum, where there was a specific police escort and the suspect was told that he was being escorted around the house. The practical reality is that this was a one-bedroom place. There was nowhere else to go. So when they asked him to go outside, that was a simple fact of expediency because, again, they wanted to have a conversation with the two of them apart. In addition, in the government's view, all three of these mitigating factors really do in favor of the fact that this was not the type of custodial setting that this court has found in his previous decisions. But also, there really are no aggravating factors in this case either. The lower court found that there were no strong arm tactics used by the police in this case. But they did arrest him immediately. That is correct. But the record below was clear that the officer did not decide that she was going to arrest him before coming into the house, before she had the conversation with the victim. This was very much akin to like a well check. What's going on here? What do you want to do? We have nowhere to take you. This individual was homeless and the police officers knew it. And so, even though— How much weight should we put on the—how much weight should the courts put on the fact that he was arrested immediately? I think the lower court here and Judge Smith's question here really gets to something important. That ultimately, what unfolds in the context of these conversations can dictate the outcome. So looking back at was he arrested or not doesn't necessarily inform the mindset of the defendant when they're having these types of conversations in that first instance. And that's why this court just two years ago recognized that a policeman's unarticulated plan shouldn't really have a bearing on whether a suspect that's in custody has that objectively reasonable perspective that they are being restrained in a way that's associated with a formal arrest. Of course, Your Honor, Griffin is not a case that should be applied ritualistically. This is a totality of the circumstances case. And what the district court focused on was correct. This was a voluntary series of conversations at Mr. Isham's home, conversations he participated in in a conversational, friendly manner. And the district court should be affirmed in finding When you use the word conversational, at first I thought you were meaning it wasn't over the top, there was no yelling. But then you said it was sort of talking about, well, what to do next? Where can she go? Can she live here? Which way are you using the word conversational here? Frankly, both. I think that this is a case where we don't have the police officers engaging with Mr. Isham in any type of aggressive or coercionary or sort of accusatory tone. So you have that. And then on the flip side, you also have Mr. Isham engaging voluntarily with the police officers because there is this question of where should she go next? Counsel, with regard to the next issue, the evidence is referred to as unspecified assaults evidence. What does unspecified mean? Thank you, Your Honor. I'd like the opportunity to clarify just precisely what this evidence is because I think that that's a mischaracterization of what the district court admitted in this case. And the reason I ask is that this type of evidence needs to be supported by sufficient evidence. And if it's unspecified, I wonder if it was. Thank you, Your Honor. Yes. What we're talking about here is first to understand the context of the relationship, very important in this case. There were five tribal domestic violence assaults between this domestic partnership convictions of the defendant that were excluded by the district court during a six-year period of time leading up to his federal habitual offender conviction. Mr. Isham was convicted of being a habitual offender in 2013. He went to prison for two years. After getting out in 2015, he and the victim, similar to the relationship in the past, got together on and off in that seven-year window before this assault happened. And the victim explained and testified on the stand that when they would get together, a similar sort of circumstance would happen between them. They would get together, he would beat her up, they would break up, and they would get back together. She described this as fighting, calling her names, and that she couldn't estimate the number of times that it had happened. So as is very common, the trial court was in analyzing a circumstance between a long-term partnership where there is a history of domestic violence, there is a history of her returning to her abuser, he abuses her, she moves out, and she comes back. And that circumstance of her return actually played out in this case because she was completing her sober treatment living facility, she was homeless and had nowhere to go, and she went to his house for a few days before her next placement in another women's facility. So is the unspecified referring to we just don't exactly know what kind of an assault happened? You said, he beat me up. Was there any more detail than that? Your Honor, the district court understood, and again, the lens by which the district court reviews these things on the trial record is holistic. It's not just the victim's testimony, it's also the cross-examination of the victim, the testimony of Mr. Isham himself, and then obviously the special agent in this case. But throughout the course of the trial, what we learned is that, again, Mr. Isham had gone to prison in connection with that federal assault conviction, and that they had come together, she had come back to live with him on several occasions after the fact, and that they would get together, again, he would beat her up, and then they would break up. That's the phrase, is just that he would beat her up. There's nothing more specific to help the trial court understand whether, in fact, this happened, or how it happened, or whether it was related, or sufficiently proven to be admissible under 404B? There were several statements in the record, and I do see I'm approaching time, if I may. Please do. Specifically, this victim described this being the same old thing. We would get together, things would happen, we would break up, and we would get back together. Later, she again described this as fighting and stuff, calling me names. I could not estimate the number of times this happened. I never called 911. Mr. Isham made me feel like going to prison was my fault. And again, all of this was the same defendant, the same victim, and the same relationship. The court was not in the position to make credibility determinations between Mr. Isham and the victim in this case. But simply considering the totality of these facts, including all of the facts and circumstances of the federal assault conviction, which also came out at the trial. He beat her up, threw her to the ground, and injured her. All of that was part of the district court's calculus, that this did meet the Huddleston standard to prove by a preponderance, or at least that the jury could consider this for purposes of their deliberations. Any other questions? Thank you. Very briefly on the Miranda issue, I just note that the government continues to parrot the district court's flawed logic here. And its overwhelming focus on the absence of strongarm or deceptive tactics stands in contrast to Griffin, which specifically notes that such tactics are not necessary. They weren't present there. It was conversational there. But based on the police-dominated environment, separating him from other people, all of those factors that we have in spades here as well, that was determined to be custodial, and Mr. Isham should be as well. I'll turn to the 404B. I think it's important. We're not challenging the prior conviction here. You know, the government's focusing on what was excluded, but that doesn't make this – I apologize, I see I'm out of time. If I could briefly finish. Yes, please do. What was excluded does not make this evidence admissible. It really was unspecified assaults here. The victim CRK here talked about fighting, answered a question about being hurt, talked about things would happen. No more detail whatsoever was given. Not dates, not times, not locations. It made it impossible for Mr. Isham to defend against this at trial. And where it was really predominantly introduced for what can only be propensity issues, it makes it even more troubling, its admission here. That's all I have. Thank you. Thank you. Thank you to both.